## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:16-CV-03491 |
| | ) | |
| | ) | |
| TEAM ENVIRONMENTAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

The undisputed facts demonstrate Team Environmental, LLC ("Team Environmental" or "Defendant") is liable for back wages and liquidated damages in this case. Defendant violated Section 7 of the Fair Labor Standards Act ("FLSA" or "the Act") when it failed to pay employees premium overtime compensation for all hours worked over forty in a workweek. Defendant admits its employees regularly worked more than forty hours in a workweek and that it did not pay its employees overtime premium pay at the appropriate statutory rate for all hours worked over forty in a workweek.  Defendant's concessions demonstrate there is no genuine issue of material fact with regard to Defendant's liability under the Act.  Plaintiff R. Alexander Acosta, Secretary of Labor, U.S. Department of Labor's ("Plaintiff" or the "Secretary") Motion for Partial Summary Judgment, therefore, should be granted and Defendant held liable for its violation of Section 7 of the Act.

Furthermore, as "[d]ouble damages are the norm [and] single damages the exception," Defendant also is liable for liquidated damages under 29 U.S.C. § 216(b).[1] *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir 1986); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). To challenge liquidated damages, an employer must present "plain and substantial" evidence that it acted with subjective good faith and objective reasonableness to avoid a liquidated damages award. *Richard, et al. v. Marriott Corp*., 549 F.2d 303, 306 (4th Cir. 1977). This case is devoid of any such evidence that would relieve Defendant of liquidated damages. Rather, Defendant attempts to cloud the record with baseless assertions of a vague industry standard that purportedly excused the violations. Well-settled case law states that industry standard does not constitute "plain and substantial" evidence of good faith. Moreover, Defendant has failed to produce sufficient evidence demonstrating such an industry standard even exists.

Accordingly, and for reasons set forth in detail below, Plaintiff respectfully requests that its Motion for Partial Summary Judgment be granted in its entirety.

## I.     Factual Background

Defendant Team Environmental has provided pipeline construction inspection services to the gas industry since 2007. Between 2012 and 2016, Defendant's annual gross revenue increased from $10,000,000 to $25,000,000. (Randy Heatherington Dep., Exh. A, p. 38-39, li. 18-10). Most of the pipeline construction takes place in rural areas of West Virginia, Ohio, and Pennsylvania. (Dennis Weekley Deposition, Exh. B, pp. 53-54, li. 18-2, p. 62, li. 2-3). Defendant typically enters into three-year renewable master service agreements ("MSA"), which regulate insurance requirements, frequency and methods for billing, safety training and

---

[1] The number of employees who were harmed by these violations, and the back wages due to each such employee, are issues appropriately addressed during the damages phase at trial.

2

requirements, and the general rights of the parties, with gas companies. (Weekley Dep., Exh. B, pp. 13-16, li. 13-4, pp. 35-36, li. 1-21). Each pipeline construction job site is governed by a more detailed agreement called a Request for Pricing ("RFP") or Request for Quotes ("RFQ"). RFPs and RFQs identify the terms and definitions of the services to be provided for the jobsite, invoicing methods, bidding protocols, inspector types needed and day rates, per diem rates, and mileage rates to be paid to Defendant for each position. (Weekley Dep, Exh. B, pp. 36-38, li. 24-19). Defendant then recruits and hires inspectors to work at the jobsite, paying between 20% and 28% less than the amount paid to Defendant by the gas company. (Carson Chenoweth Deposition, Exh. C, p. 19, li. 12-24; Weekley Dep., Exh. B, pp. 15-16, li. 5-23, p. 141, li. 7-13; Heatherington Dep., Exh. A, p. 22, li. 10-15). Inspectors work at these jobsites for weeks, sometimes months, at a time. (Weekley Dep., Exh. B, p. 62, li 4-5). The number of inspectors employed by Defendant varies month to month depending on the MSA and the time of year. (Weekley Dep., Exh. B, p. 23; li. 13-23, pp. 31-33, li. 24-14).

Defendant pays inspectors a flat day rate for all hours worked. (Weekley Dep., Exh. B, pp. 142-43, li. 15-1, pp. 202-03, li. 23-11). Inspectors regularly work more than forty hours in a workweek. (Weekley Dep., Exh. B, p. 140, li. 7-10, p. 199-200, li. 14-3). Depending on the RFP or RFQ, inspectors receive either no premium overtime compensation for hours worked over forty in a workweek, or premium overtime compensation only for hours worked over fifty hours in a workweek. (Weekley Dep., Exh. B, pp. 38-39, li. 7-13, pp. 92-93, li. 19-6, pp. 148-49, li. 4-9, pp. 156-59, li. 5-4, pp. 176-78, li. 20-12). Under some RFPs or RFQs, inspectors received premium overtime compensation for hours worked over sixty in a workweek. (*Id.*). Defendant occasionally makes additional payments to the inspectors, for non-work hours. (Weekley Dep., Exh. B, p. 80, li. 6-21, pp. 167-69, li. 23-8). This additional compensation is paid at the

individual inspectors' day rate, not as overtime compensation. (*Id.*; Defendant's Pay Records, Exh. D).

There are no material issues of fact that remain in dispute.  Defendant's records establish that its Inspectors regularly work more than forty hours in a workweek.  (Weekley Dep., Exh. B, p. 140, li. 7-10, p. 199-200, li. 14-3) (Defendant's Pay Records, Exh. D). Those same records also establish Defendant does not pay its inspectors one and one-half times their regular rate for all hours worked over forty in a workweek. (Weekley Dep., Exh. B, pp. 38-39, li. 7-13, pp. 92-93, li. 19-6, pp. 142-43, li. 15-1, pp. 148-49, li. 4-9, pp. 156-59, li. 5-4, pp. 176-78, li. 20-12, pp. 202-03, li. 23-11) (Defendant's Pay Records, Exh. D).  Defendant's own records document the number of hours each inspector worked in a given workweek without receiving the time and one-half overtime premium to which they were entitled.

It also is undisputed that before the Department of Labor's ("DOL") investigation, Defendant never consulted an attorney or an accountant regarding compliance with the FLSA. (Chenoweth Dep., Exh. C, p. 29, li. 11-21; Weekley Dep., Exh. B, p. 179-80, li. 19-8; Heatherington Dep., Exh. A, p. 39, li. 11-18).  In fact, prior to the DOL's investigation, Defendant made no effort to ensure that it complied with Section 7 of the FLSA. (Weekley Dep., Exh. B, pp. 100-03, li. 3-21, p. 105, li. 2-6, p. 179, li. 11-17; Heatherington Dep., Exh. A, pp. 24-25, li. 13-6).  These undisputed facts confirm Defendant's failure to make any good faith effort to comply with the overtime provisions of the FLSA, and that they had no reasonable grounds to believe that they were complying with these provisions.  (Chenoweth Dep., Exh. C, p. 29, li. 11-16, p. 30, li. 17-21; Weekley Dep., Exh. B, pp. 100-03, li. 3-21, p. 105, li. 2-6, pp. 179-80, li. 11-8; Heatherington Dep., Exh. A, pp. 24-25, li. 13-6, p. 39, li. 11-18).

## II.      Argument

### A.      *Summary Judgment Standard*

Summary judgment is warranted if "there is no genuine issue as to any material fact and

… the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  There is no genuine issue of material fact when "the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Accordingly,

summary judgment will be granted unless a reasonable fact-finder could return a verdict for the

nonmoving party on the evidence presented.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), *cert. denied* 541

U.S. 1030 (2004).

A party opposing a properly supported motion for summary judgment may not rest on

unsupported denials, but must respond with affidavits or other evidentiary materials as provided

in Rule 56(e).  *Disney v. Entenmann's, Inc*., No. Civ. H-99-2247, 2000 WL 1721793, at *4 (D.

Md. Nov. 17, 2000) (citation omitted). The non-moving party must "set forth specific facts that

would be admissible in evidence in the event of trial from which a rational trier of fact could find

for the nonmovant." *Adler v. Walmart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998).   If the

evidence presented by the nonmoving party is merely colorable, or is not significantly probative,

summary judgment must be granted. *Schamann v. O'Keefe*, 314 F. Supp.2d 515, 522 (D. Md.

2004) (citation omitted).

Plaintiff has met his burden and is entitled to judgment as a matter of law on each of the

issues addressed below.

B.  *Defendants Violated the FLSA Overtime Requirement*

The FLSA[2] is designed to abolish substandard labor conditions.  29 U.S.C. § 202(a); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Monahan v. County of Chesterfield, Virginia*, 95 F.3d 1263, 1267 (4th Cir. 1996)*; see also*, *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.,* 363 F.3d 299, 304 (4th Cir. 2004) ("The purpose of the FLSA is 'to protect all covered workers from substandard wages and oppressive working hours.'") (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). The FLSA was enacted, in part, to mitigate against the "evil of 'overwork.'" *Id.* (quoting *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572, 578 (1942).

Section 7 of the FLSA requires an employer to pay its employees a premium rate of pay for any hours over forty worked in a workweek:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours **unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed**.

29 U.S.C. § 207(a)(1) (emphasis added);  *see also Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997).  The record shows Defendants did not comply with Section 7.

Defendant concedes its inspectors worked more than forty hours in a workweek. (Weekley Dep., Exh. B, p. 140, li. 7-10, p. 199-200, li. 14-3).  Defendant's business records support this concession. (Defendant's Pay Records, Exh. D).  Even though the FLSA  requires payment at "not less than one and one-half times the regular rate" for all hours worked over

---

[2] During the investigative period Defendant was covered by the FLSA under §3(s)(1)(A) of the Act because annual dollar volume of sales for Defendant was, at all relevant times, over $500,000.00. (*See* Response to Admissions #7, Exhibit E).

forty, Defendant admits it failed to make such payments to its inspectors. (Weekley Dep., Exh. B, pp. 38-39, li. 7-13, pp. 92-93, li. 19-6, pp. 142-43, li. 15-1, pp. 148-49, li. 4-9, pp. 156-59, li. 5-4, pp. 176-78, li. 20-12, pp. 202-03, li. 23-11).  Instead, Defendant paid inspectors a flat day rate.  (Weekley Dep., Exh. B, p. 142-43, li. 15-1, pp. 202-03, li. 23-11). Typically, the amount of the day rate did not change, it remained static regardless of the number of hours worked on any given day or week. (*Id*.).   In limited circumstances the RFP or RFQ allowed Defendant to invoice the gas company for premium rate overtime for hours worked by inspectors over fifty in a workweek.[3]  (Weekley Dep., Exh. B, pp. 38-39, li. 7-13, pp. 92-93, li. 19-6, pp. 148-49, li. 4-9, pp. 156-59, li. 5-4, pp. 176-78, li. 20-12).  In these situations Defendant would pay its inspectors more than their regular rate for hours worked over fifty in a workweek.  (*Id*.).  However, in those limited instances, Defendant did not pay those inspectors the overtime premium rate for the work hours falling between forty and fifty hours, in a workweek.  (*Id*.).  Instead, depending on the RFP or RFQ in place, Defendant paid the overtime premium rate only for those hours arising after the inspector worked more than fifty hours in a workweek.  (*Id*.).

Defendant's decision to pay inspectors a flat day rate regardless of the number of hours worked in a given week, and to only pay inspectors more than their regular rate for hours worked over fifty in a workweek when required by the applicable RFP or RFQ, violates Section 7 of the FLSA.  While the FLSA permits day rate methods of compensation in certain instances, it does not absolve employers of complying with FLSA overtime requirements.  *See* 29 U.S.C. § 207(a)(1); *see also* 29 C.F.R. § 778.112; *Lee v. Vance Executive Protection, Inc.*, 7 Fed. Appx. 160, 163-64 (4th Cir. 2001).  Section 778.112 states:

---

[3] Some RFPs or RFQs permitted Defendant to invoice the gas company for premium rate overtime for hours worked over sixty in a work week. (Weekley Dep., Exh. B, pp. 38-39, li. 7-13, pp. 92-93, li. 19-6, pp. 148-49, li. 4-9, pp. 156-59, li. 5-4, pp. 176-78, li. 20-12).

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.**

29 C.F.R. § 778.112 (emphasis added).  Thus, once it is established that Defendant's inspectors were paid a day rate – which Defendant does not dispute – Plaintiff need only show that Defendant failed to pay its employees an "extra half-time pay … for all hours worked in excess of 40 in the workweek." (Weekley Dep., Exh. B, pp. 142, li. 17-19) ("Everybody was paid on a day rate. There wasn't a decision that I made consciously on how to pay them."). *Id*.; *see also Lee*, 7 Fed. Appx. at 165 (employer that "paid a flat sum for a day's work ... without regard to the number of hours worked in the day," violated the FLSA).  That Defendant failed to pay inspectors extra half-time pay for all hours worked over forty in a workweek also is undisputed:

> A: … [O]bviously, we just paid a day rate. We did not pay our employees overtime, and they worked – many of them worked a lot of hours during this project….

(Weekley Dep., Exh. B, pp. 92-93, li. 19-6).  Defendant's failure to adhere to the requirements of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112 render it liable under the FLSA.

Plaintiff anticipates Defendant will contend it is entitled to a credit against back overtime wages because it paid inspectors compensation that it alleges was not remuneration for hours worked.  Specifically, Defendant will assert it regularly paid inspectors for six days each workweek when they only worked five.   (Weekley Dep., Exh. B, p. 80, li. 6-21, pp. 167-69, li. 23-8).

This argument is irrelevant to the underlying legal issue of whether Defendant failed to pay the overtime premium for hours worked over forty in violation of Section 7.   Defendant's assertion goes directly to damages, not liability and does not address whether Defendant

8

complied with the requirements of the FLSA.  Defendant's argument only touches upon the

amount of back wages Defendant will owe after its violation of Section 7 has been established. [4]

Furthermore, nothing in the FLSA allows for the credit sought by Defendant.

"Exemptions must be narrowly construed and the burden is on [Defendant] 'to show that it is

entitled to the benefits of th[e] exceptions.'" *Lee*, 7 Fed. Appx. at 164 (quoting *Johnson v. City of*

*Columbia*, 949 F.2d 127, 130 (4th Cir.1991)).  Under Section 7 of the FLSA, only three

categories of compensation may be used to offset overtime compensation.  *See* 29 U.S.C. §

207(h)(2); *Scott v. City of New York*, 592 F. Supp.2d 475, 481 (S.D.N.Y. 2008).  Each of those

categories requires "extra compensation provided by a premium rate."  *See* 29 U.S.C. §

207(h)(2).  Here, Defendant acknowledges that the alleged extra compensation paid to inspectors

was not paid at a premium rate.  (Weekley Dep., Exh. B, p. 80, li. 6-21, pp. 167-69, li. 23-8;

Defendant's Pay Records, Exh. D).  Instead, this money was paid out at the same rate as the

inspectors' day rates, i.e., the employee's regular rate of pay.  (Weekley Dep., Exh. B, p. 80, li.

6-21, pp. 167-69, li. 23-8; Defendant's Pay Records, Exh. D).

Finally, even assuming Defendant is entitled to some type of credit and analysis of said

credit is appropriate at this stage of the litigation – which Plaintiff denies – any offsets to

overtime compensation are limited to the same workweek or work period in which these

premiums were paid.  *See Herman v. Fabri-Centers of America, Inc.*, 308 F.3d 580, 590 (6th Cir.

2002); *see also Howard v. City of Springfield*, 274 F.3d 1141, 1149 (7th Cir. 2001) (holding that

employer may apply certain credits against overtime owed on a pay period by pay period basis);

---

[4] As noted above, Plaintiff is not seeking summary judgment on the amount of back wages due or
to whom back wages are due.  Correspondingly, Plaintiff does not seek summary judgment on
Defendant's argument that certain inspectors were exempt under Section 13(a)(1) of the FLSA.
The Secretary intends to prove the extent of the violations and the back wages due through
Defendant's payroll and timekeeping records, representative testimony and other evidence at
trial.

*Nolan v. City of Chicago*, 125 F.Supp.2d 324, 331–33 (N.D. Ill. 2000) (holding that "the offsets should be calculated on a period by period basis").  Nothing in the record even hints that application of this offset would erase Defendant's liability in this case.

Defendant violated the FLSA when it failed to pay its employees the premium overtime rate for all hours worked over forty in a workweek.  The record does not allow for any other conclusion.  As such, Plaintiff's Motion for Partial Summary Judgment should be granted.

C.    *Defendants are Liable for Liquidated Damages*

Under Section 16(c) of the FLSA, the Secretary may recover unpaid wages and an additional equal amount in liquidated damages if an employer violates Section 7 of the Act.  *See* 29 U.S.C. § 216(c).  Liquidated damages are considered compensatory, not punitive.  *See Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 548 (4th Cir. 1998).  It is intended to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.  *See id*.  "Double damages are the norm, single damages the exception[.]" *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir 1986); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997); *Lockwood v. Prince George's Cty., Md*., 58 F. Supp. 2d 651, 657 (D. Md. 1999), *aff'd,* 217 F.3d 839 (4th Cir. 2000).

In challenging the appropriateness of liquidated damages, the Fourth Circuit has concluded that an employer must present "plain and substantial" evidence that it acted with subjective good faith and objective reasonableness to avoid a liquidated damages award. *Richard, et al. v. Marriott Corp*., 549 F.2d 303, 306 (4th Cir. 1977); *see also Lockwood*, 58 F. Supp. 2d 657. To meet its burden, an employer must affirmatively establish a subjective defense; *i.e*., that the employer acted in good faith by taking active steps to ascertain the dictates of the FLSA and then move to comply with them. The employer also must establish an objective

defense; *i.e*., that there were reasonable grounds for believing the employer was in compliance with the Act. *Lockwood*, 58 F. Supp. 2d at 658; *Anderson v. Penn Nat'l Gaming, Inc.*, No. CIV.A. 3:04CV42, 2007 WL 2819533, at *2 (N.D.W. Va. Sept. 26, 2007); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).

An employer's burden of proof is "a difficult one to meet." *Marshall,* 668 F.2d at 753 (quoting *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987)); *Lockwood*, 58 F. Supp. 2d at 657. The employer has a substantial burden to show both subjective good faith and objective reasonableness for believing the employer was in compliance with the FLSA. "In the absence of such proof, a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Elwell*, 276 F.3d at 902 (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)); *see also Min Fang Yang*, 345 Fed. Appx. at 39; s*ee also Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3d Cir. 1988); *Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984).

To establish good faith, the employer must prove "an honest intention to ascertain and follow the dictates of the Act." *Marshall*, 668 F.2d at 753. Merely proving that the employer did not act intentionally, had good intentions, or was ignorant of the law is not sufficient to avoid liability for liquidated damages. *Reich v. Brenaman Electrical* Service, Civ. No. 95-3737, 1997 WL 164235, *8 (E.D. Pa. Mar. 28, 1997) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984) (noting that "[a] good heart but an empty head does not produce a defense" against liquidated damages). Rather, the good faith affirmative defense requires a showing that Defendant took an affirmative action to ensure compliance with the Act and that Defendant believed it was in compliance with the Act at the time of the violation. *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 99 (D.D.C. 1998); *see also Escamila v. Nuyen*,

No. CV 14-0852 (AK), 2017 WL 24739, at *12 (D.D.C. Jan. 3, 2017)(finding defendants liable for liquidated damages as they did not rely on advice from counsel, failed to pay attention to legal precedent or Department of Labor recommendations, and failed to look into the applicable statutes regarding FLSA compliance).

Although the amount of back pay is still to be determined, there can be no dispute that any such amount is subject to the full payment of double that amount as liquidated damages. The evidence shows that Defendant did not make any good faith effort to comply with the FLSA. When asked about any steps Defendant took to determine it was complying with the FLSA prior to learning of the Department of Labor's investigation, two of Defendant's Fed. R. Civ. P. § 30(b)(6) representatives, manager Dennis Weekley and accountant Randy Heatherington, testified they had never discussed the FLSA prior to the Department's investigation. (*See* Weekley Dep., Exh. B, pp. 100-03, li. 3-21, p. 105, li. 2-6, p. 179, li. 11-17; Heatherington Dep., Exh. A, pp. 24-25, li. 13-6). Manager Weekley testified that he was familiar enough with the concept of overtime to know that premium overtime compensation should be paid for hours worked over forty in a workweek.  (Weekley Dep., Exh. B, p. 147, li. 5-13). None of the Defendant's three designated Fed. R. Civ. P. § 30(b)(6) representatives testified they ever consulted an attorney regarding compliance with the FLSA.  (Chenoweth Dep., Exh. C, p. 29, li. 11-16; Weekley Dep., Exh. B, p. 179-80, li. 19- 2; Heatherington Dep., Exh. A, p. 39, li. 11-14). Similarly, before learning of the Department of Labor's investigation, all three of Defendant's designated Fed. R. Civ. P. § 30(b)(6) representatives testified they had never consulted an accountant regarding compliance with FLSA.  (Chenoweth Dep., Exh. C, p. 30, li. 17-21; Weekley Dep., Exh. B, p. 180, li. 4-8; Heatherington Dep., Exh. A, p. 39, li. 15-18). As such, the evidence shows Defendant did not take active steps to ascertain the requirements under the

FLSA and did move to comply with these requirements. It follows then, that the evidence does not support a finding that Defendant had reasonable grounds for believing it was in compliance with the FLSA, as by its own admission, Defendant never considered the FLSA until it learned of the Wage and Hour investigation into its pay practices.

Despite failing to meet the prongs of the good faith affirmative defense to liquidated damages, Defendant has argued that its behavior is excusable because it alleges paying on a day rate with no additional premium compensation for hours worked over forty in a workweek is a standard that is accepted practice across the gas industry. (Weekley Dep., Exh. B, p. 223, li. 12-15; Weekley Affidavit, Exh. F, ¶¶ 7, 8; Defendant's Answer, ECF No. 27). Courts have consistently held that as a defense to liquidated damages, "good faith [is not] demonstrated by … simple conformity with industry-wide practice." *Rogers v. Savings First Mortgage, LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005), *citing Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997); *Martin v. Cooper Elec. Supply Co*., 940 F.2d 896, 910 (3d Cir. 1991); *Brock v. Wilamowsky*, 833 F.2d 11, 19-20 (2d Cir. 1987); *Lusk v. Virginia Panel Corp.*, No. 5:13cv00079, 2014 WL 3900325, at *6 (W.D. Va. Aug. 11, 2014); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316 (S.D.N.Y. 2011). "In lieu of any affirmative attempt by an employer to determine the legality of its wage payment practices, the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation." *Martin*, 940 F.2d at 909-10, *citing Brock*, 833 F.2d at 19–20.

Defendant's industry standard argument has been rejected under both prongs of the good faith test. Courts have concluded that the subjective prong of the good faith test "requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an

employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Southern New England Telecommunications Corp.*, 121 F.3d at 71. The *Southern New England Telecommunications Corp*. court concluded that adherence to industry-wide practice is not sufficient to establish the requisite "active steps to ascertain the dictates of the FLSA." *Id*.

In *Martin*, the court rejected the argument that the employer's violations conformed to "well-established and widely accepted industry practice," concluding that consistency with industry standards is not grounds for finding an objective good faith violation of the Act. 940 F.2d at 910. "In lieu of any affirmative attempt by an employer to determine the legality of its wage payment practices, the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation." *Id*. Establishing wage practices based on what the industry is doing rather than ensuring compliance with the FLSA does not constitute a reasonable basis for believing that its practices complied with the Act. *See Brock*, 833 F.2d at 19-20.

Defendant's excuse that other companies in the gas industry were allegedly also failing to comply with the FLSA does not amount to a good faith defense under the FLSA. Accordingly, summary judgment in favor of the Secretary for liquidated damages in an amount equal to the amount of back wages is warranted.

## III. Conclusion

For all the reasons set forth above, Plaintiff respectfully submits that this Court grant its Motion for Partial Summary Judgment and find that: (1) Defendant violated the overtime provisions of the FLSA, 29 U.S.C. § 207; and (2) Defendant is liable for liquidated damages under 29 U.S.C. § 216(b).

Mailing Address:

Douglas N. White
Associate Regional Solicitor
U.S. Department of Labor
201 12th Street South
Arlington, VA 22202-5450
Tel: (202) 693-9382
Fax: (202) 693-9392

Respectfully submitted,

Nicholas C. Geale
Acting Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Douglas N. White
Associate Regional Solicitor

  /s/ Pollyanna Hampton
BY: Pollyanna Hampton
PA State Bar No. 94072
Ali A. Beydoun
VA State Bar No.78150
Leah A. Williams
OH State Bar No. 75587
U.S. Department of Labor
Office of the Regional Solicitor
201 12th Street South, Suite 401
Arlington, VA  22202-5450
T: (202) 693-9382
F: (202) 693-9392
hampton.pollyanna@dol.gov
beydoun.ali@dol.gov
williams.leah.a@dol.gov

    /s/ Gary L. Call
BY: Gary L. Call
Assistant United States Attorney
WV State Bar No. 589
U.S. Attorney's Office
Southern District of West Virginia
PO Box 1713
Charleston, WV 25326
T: (304) 345-2200
F: (304) 347-5440
gary.call@usdoj.gov

June 21, 2017