UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

R. ALEXANDER ACOSTA, SECRETARY
OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

      Plaintiff,

v.                              Civil Action No. 2:16-cv-03491

TEAM ENVIRONMENTAL, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending in this case, in which the defendant Team Environmental, LLC ("Team") is accused of failing to abide by the overtime provisions of the Fair Labor Standards Act ("FLSA"), are two motions in limine. The plaintiff Secretary of Labor ("Secretary") has filed a motion to bar Team from excluding certain employee compensation (e.g., payment for days not worked due to inclement weather) from the calculation of the employees' regular rate of pay (which, if lowered, would correspondingly lower any overtime compensation owed). The defendant Team has filed a motion to permit it to receive credit for payments made to employees for non-compensable time (e.g., payment for days not worked due to inclement weather) against any overtime compensation owed.

In an order entered December 29, 2017, the court granted the Secretary's motion for partial summary judgment that Team failed to pay overtime compensation in violation of section 7 of the FLSA (29 U.S.C. § 207). Accordingly, each of these motions concerns the amount of damages owed, which is to be determined at trial.

The motions deal with two types of payments: payments on days when Team's employees could not work due to inclement weather ("weather days"); and payments for non-work days when Team's employees received pay because they were guaranteed a certain number of paid days per week but were not required to work all of those days ("guaranteed days"). Accordingly, the two main issues here are: first, whether payment for weather days and guaranteed days not worked should be included or excluded from the regular rate when calculating overtime due; and second, whether, if either of those payments is included in the regular rate, the payment may be credited towards the amount of overtime due.

I. Calculating the regular rate

Turning first to the calculation of the regular rate (on the basis of which the overtime is determined), the plaintiff contends that pay for both weather days and guaranteed

2

days should be included in the regular rate; the defendant claims they should be excluded.

Section 207 mandates that employers pay employees at one and one-half times their "regular rate" for hours worked over forty in each workweek. 29 U.S.C. § 207(a)(1). If an employer violates this section, it is liable for the amount of overtime compensation owed, calculated pursuant to the regular rate, and if applicable, liquidated damages.[1] 29 U.S.C. § 216 (b).

Where, as here, the employees are paid a flat day-rate, the regular rate is determined by totaling all the sums received in the workweek and dividing that amount by the total hours actually worked. See 29 C.F.R. § 778.112. Section 207(e) of the FLSA instructs that "all remuneration for employment paid to, or on behalf of, the employee," shall be included in the regular rate, aside from eight enumerated exceptions, only one of which appears to be applicable here (§207(e)(2)). The employer bears the burden of establishing that an exception to an FLSA requirement applies. See Lee v. Vance Exec. Prot.,

---

[1] In the order entered December 29, 2017, the court granted the Secretary's motion for partial summary judgment that Team must pay liquidated damages equal to its overtime compensation owed.

Inc., 7 F. App'x 160, 164 (4th Cir. 2001), see also Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 330 (3d Cir. 2016).

The United States Supreme Court recently rejected the principle that "exemptions" to the FLSA (i.e., employees not covered) should be narrowly construed, holding that, because the FLSA "gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.'" Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018) (quoting A. Scalia & B. Garner, Reading Law 363 (2012)). The Court was addressing § 213 exemptions but did not explicitly limit its holding to that section. The Secretary contends that "[i]t is well-settled that the holding in Encino Motorcars is limited to the exemptions set forth in Section 213 of the FLSA[,]" yet provides no authority so stating. Indeed, the case cited by the Secretary on this point, Flood v. Just Energy Mktg. Corp., 904 F. 3d 219 (2nd Cir. 2018), does not address the scope of Encino Motorcars, nor has the court found any case directly addressing the issue. Compare, e.g., McKinnon v. City of Merced, No. 118CV01124LJOSAB, 2018 WL 6601900, at *3 (E.D. Cal. Dec. 17, 2018) (applying the Encino Motorcars "fair reading" directive to § 207(e)), to Berry v. Best Transportation, Inc., No. 4:16-CV-00473-JAR, 2018 WL 6830097, at

\*8 (E.D. Mo. Dec. 27, 2018) ("[Encino Motorcars] focuses entirely on exemptions and makes no mention of exceptions."). Here, the court finds that either reading of the FLSA yields the same result, and accordingly does not decide whether Encino Motorcars requires § 207(e) exceptions to be given a "fair," rather than a "narrow," interpretation.

The defendant Team intends to present evidence that guaranteed days and weather days fall under the statutory exception set forth in § 207(e)(2), which states:

> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--
>
> . . .
>
> (2) <u>payments made for occasional periods when no work is performed due to</u> vacation, holiday, illness, <u>failure of the employer to provide sufficient work</u>, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

(emphasis added).

The Department of Labor's implementing regulations, 29 CFR § 778, provide guidance on how to interpret § 207(e)(2). See Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 357 n.2 (4th Cir. 2011) (finding that Skidmore, rather than

*Chevron*, deference applies to 29 CFR § 778 because it was not promulgated in accordance with notice and comment rulemaking: "interpretive bulletins 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). 29 CFR § 778.218 states, in pertinent part:

> This provision of section 7(e)(2) deals with the type of absences which are infrequent or sporadic or unpredictable. It has no relation to regular "absences" such as lunch periods nor to regularly scheduled days of rest. . . . The term holiday . . . does not refer to days of rest given to employees in lieu of or as an addition to compensation for working on other days. . . .
>
> The term "failure of the employer to provide sufficient work" is intended to refer to occasional, sporadically recurring situations where the employee would normally be working but for such a factor as . . . weather conditions affecting the ability of the employee to perform the work and similarly unpredictable obstacles beyond the control of the employer. The term does not include . . . any type of routine, recurrent absence of the employee.

Regarding occasional weather days, it is apparent that they fall within the § 207(e)(2) exception, particularly inasmuch as the regulations thereunder, though not the subject of notice and comment rulemaking, reasonably and explicitly include, in the exceptions, "occasional, sporadically recurring

6

situations where the employee would normally be working but for . . . weather conditions affecting the ability of the employee to perform the work." Thus, evidence of pay for such days when employees were paid but performed no work due to inclement weather, is relevant to the calculation of the regular rate of pay in that such payments are excluded in fixing the regular rate of pay.

The Secretary nonetheless argues that Team's poor recordkeeping will prevent it from meeting its burden of proving that the exclusion applies to weather days, and that Team should therefore be denied the opportunity to present any such evidence regarding the exclusion of weather day payments from the regular rate. The court declines to decide this fact-dependent issue in a motion in limine; rather, Team may present its relevant evidence on the issue at trial. The court will then decide, based on the evidence presented, whether Team has satisfied its burden. The Secretary's motion is therefore denied as to occasional weather days.

As for guaranteed days, where, based on a given contract with Team and a third-party, Team employees were guaranteed payment for a certain number of days (typically six), but regularly worked fewer days (typically five), the regulations contemplate that payment for such non-work days is

included in the regular rate. The guaranteed days were not "infrequent or sporadic or unpredictable," but were guaranteed each week. They were essentially a "day[] of rest given to employees . . . as an addition to compensation for working other days[,]" or a "type of routine, recurrent absence of the employee." Thus, the pay for these guaranteed days should be included in the regular rate. Any evidence regarding the exclusion of pay for guaranteed days from the regular rate is therefore irrelevant to the calculation of damages and inadmissible.

The defendant Team argues, however, that if payment on guaranteed days is included in the regular rate calculation, so too must the hours for which those payments are associated be included in the calculation. In other words, Team contends that if the payment for guaranteed days is added to the numerator, then hours representing those non-work payments should be added to the denominator to calculate the regular rate.

The denominator in the regular rate calculation is comprised of all hours worked. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. §

8

778.109, see also Smiley at 331. "As a general rule the term 'hours worked' will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223. Indeed, the regulation takes further note that hours not worked are excluded from the calculation of the regular rate:

> If [employees who are] on call are not confined to their homes or to any particular place, but may come and go as they please, provided that they leave word where they may be reached, the hours spent "on call" are not considered as hours worked.

Id. Here, the employees in this category were not even "on call," but were afforded one extra day of pay for a non-work day. The defendant is free, however, to provide evidence that work was performed on such days, in which case those hours of work will be included in the regular rate calculation. Otherwise, non-work days will not be added to the denominator for hours worked.

The court having found that occasional weather day payments may be excluded from the regular rate and guaranteed day payments may not, the Secretary's motion is accordingly granted in part and denied in part.

9

## II. Credits

In defendant's motion in limine to permit it to credit paid, non-compensable time against any overtime compensation allegedly due and owing, the defendant contends that it is entitled to credit the amount paid for weather days and guaranteed days as a set-off against any amount found to be owed for overtime compensation. The Secretary disagrees, claiming that the FLSA does not allow for such a credit.

Section 207(h) of the FLSA is the only provision that addresses credits against overtime compensation owed. It states the following:

> (1) Except as provided in paragraph (2), sums <u>excluded</u> from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 206 of this title or overtime compensation required under this section.
>
> (2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.

27 U.S.C. § 207(h) (emphasis added). The statute only addresses sums excluded from the regular rate, and states that they may not be credited towards overtime compensation owed unless they meet one of the three enumerated exceptions contained in § 207(e)(5)-(7). Those three enumerated exceptions each relate only to "extra compensation provided by a premium rate" (premium

rate being defined in the regulations as an hourly rate that must be greater than the regular rate or one and one-half times or more of the regular rate, dependent upon context, see 29 CFR § 778.308), for any one of three categories, each consisting in the main of:

| | |
|---|---|
| § 207(e)(5) | Hours worked in excess of 8 in a day or, e.g., 40 hours in a week |
| § 207(e)(6) | Hours worked on a Saturday, Sunday, holiday or the 6th or 7th day of the workweek, where the premium rate is at least time and one-half of the regular rate |
| § 207(e)(7) | Hours worked outside the hours established in good faith by the applicable employment contract or collective-bargaining agreement as the basic, normal or regular workday of 8 hours or workweek of, e.g., 40 hours, where the premium rate is at least time and one-half of the regular rate[2] |

---

[2] The full text of § 207(e)(5)-(7) is as follows:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

Insofar as inclement weather days are excluded from the regular rate, see discussion, supra, and do not meet the three enumerated exceptions, they are not creditable toward overtime compensation owed.

The paid guaranteed days which are included in the regular rate, but for which no work was performed, remain at issue. The FLSA is silent on whether paid, non-compensable time included in the regular rate can be credited toward overtime compensation owed.

In a similar circumstance, where an employer sought to offset overtime owed with credits for paid lunch breaks, the Third Circuit held that the employer was not entitled to credit compensation. See Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 333 (3d Cir. 2016), cert. denied sub nom. E.I. Du Pont De Nemours & Co. v. Smiley, 138 S. Ct. 2563 (2018) ("It is undisputed that the compensation paid for meal breaks was

---

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek;

included in plaintiffs' regular rate of pay, and thus could not qualify as 'extra compensation.' Accordingly, DuPont may not avail itself of the offset provisions explicitly allowed by § 207(h)(2).") The court reasoned that since the FLSA only provides for compensation excluded from the regular rate to offset overtime owed, any amount included in the regular rate may not be used to offset. Id. at 332 ("Nothing in the FLSA authorizes the type of offsetting DuPont advances here, where an employer seeks to credit compensation that it included in calculating an employee's regular rate of pay against its overtime liability. Rather, the statute only provides for an offset of an employer's overtime liability using other compensation excluded from the regular rate pursuant to sections 207(e)(5)-(7) and paid to an employee at a premium rate."), see also id. at 333 ("In essence, at the point at which compensation is included in the regular rate (regardless of whether the Act required it be included), an employer may not use that compensation to offset other compensation owed under the Act.") (citing Wheeler v. Hampton Twp., 399 F.3d 238, 245 (3d Cir. 2005)). Two circuits have reached contrary conclusions.

The Seventh Circuit, in Barefield v. Vill. Of Winnetka, found that an employer could offset the amount owed for unpaid roll call scheduled before their employees' shifts

with the amount they paid employees during their lunch breaks. Barefield v. Vill. of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996) ("the meal periods are not compensable under the FLSA, and Winnetka may properly offset the meal break against the compensable roll call time worked by plaintiffs."). Similarly, the Eleventh Circuit, in Avery v. City of Talladega, Ala., found that unpaid time worked pre- and post-shift could be offset by paid meal times. Avery v. City of Talladega, Ala., 24 F.3d 1337, 1344 (11th Cir. 1994) ("If the meal break is not compensable time under the FLSA, then the City should be allowed to offset the amount it pays for the meal break against any amount it owes the plaintiffs for pre- and post-shift time at work.") and id. at 1347 ("the district court correctly held that the meal periods are not compensable under the FLSA, and properly allowed the City to offset the meal break against the compensable pre- and post-shift time worked by the plaintiffs.").

While Barefield and Avery reach an equitable result, the Third Circuit in Smiley found their reasoning flawed because they "presumed an offset was permissible and focused on the fact that the FLSA did not require employers to compensate employees for the bona fide meal break periods at issue. Notably, neither opinion addresses the most relevant provision in the FLSA on the

14

issue of offsetting — 29 U.S.C. 207(h)." Smiley, 839 F.3d at 335.

The court finds the Third Circuit's reasoning in Smiley to be persuasive. Inasmuch as the only instances explicitly included in the offset portion of the FLSA, § 207(e)(5)-(7), require a "premium rate paid," it is reasonable to infer that payments made at the regular rate cannot be considered "extra compensation" that may offset the amount owed for overtime compensation. As the court in Smiley explained:

> The statutory scheme that limits crediting to the three types of "extra compensation" excluded from the regular rate against overtime obligations makes sense. . . . Excludable premium compensation may offset other excludable premium compensation. To allow compensation included in the regular rate to offset premium-rate pay, however, would facilitate a "pyramiding" in the opposite direction by allowing employers to pay straight time and overtime together. This approach fundamentally conflicts with the FLSA's concern that employees be compensated for all hours worked.

Smiley, 839 F.3d at 334. Accordingly, the court finds that guaranteed days, which are included in the regular rate, may not be credited towards overtime compensation due. As noted above, occasional weather days, which are excluded from the regular rate, also may not be credited towards overtime compensation due. Any evidence concerning credit calculations for these days is therefore irrelevant, and Team's motion in limine is denied.

III. Conclusion

For the reasons set forth above, the court accordingly ORDERS that:

1. The Secretary's motion in limine to exclude evidence regarding the exclusion of certain employee compensation from the regular rate when calculating overtime compensation owed be, and it hereby is, granted as to occasional weather days and denied as to guaranteed days; and

2. Team's motion in limine to permit credit calculations for paid non-compensable time, as outlined above, against any overtime compensation allegedly due and owing be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record and to any unrepresented parties.

ENTER: January 29, 2019

John T. Copenhaver, Jr.
Senior United States District Judge